| United States District Court | Southern District of Texas |
|---|---|

| Rene Moreno, | § | |
| | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| versus | § | Civil Action H-05-3523 |
| | § | |
| Aetna Life Insurance Co., | § | |
| | § | |
| Defendant. | § | |

# Opinion on Summary Judgment

1.  *Introduction.*

A man sues his insurance plan administrator for terminating his disability benefits. The administrator says that he is no longer entitled to the funds. Both sides have moved for summary judgment. The administrator will prevail as a surrogate for the plan.

2.  *Background.*

Rene Moreno worked as a chemical process operator for the Celanese Chemical Company in Clear Lake, Texas, for twelve years. He participated in the company's insurance plan. The plan gives Aetna Life Insurance Company – the administrator – authority to determine claims and construe the written terms.

On October 22, 2001, Moreno injured his back outside of the workplace. After the accident, he continued to work at a reduced capacity. On February 18, 2002, following a spinal fusion surgery, he stopped working. In July, he filed a claim for long-term disability benefits. Because Aetna found that he was unable to perform the material duties of his job, on August 19, 2002, it granted the benefits.

After February 18, 2004 – two years after Moreno began collecting benefits – the test for total disability became more demanding. To receive plan benefits after 24 months

of disability, an employee must not only be unable to perform the material duties of his own occupation, but *any reasonable occupation.* A reasonable occupation is defined as a job that the employee is, or "may reasonably become fitted by education, training, or experience."

In July 2004, Aetna reviewed Moreno's claim. After examining his medical records, Aetna's nurse and vocational consultants determined that Moreno could work at a light physical occupation for eight hours a day. The vocational consultant also determined that Moreno's job as a chemical process operator required only light-level work. On August 10, 2004, because Moreno was no longer "totally disabled" under the plan, Aetna terminated the benefits. Moreno appealed, and the decision was upheld. Moreno now sues to reverse Aetna's decision.

3.    *State Law Claims.*

This is a claim for employee benefits. Moreno sued for "debt" and breach of contract. These legal theories are preempted by ERISA.

4.    *Termination of Benefits.*

Because the plan gives Aetna the authority to determine benefits, the court may reverse its decision only if the decision was arbitrary. *See Ellis v. Liberty Life Assurance Co.,* 394 F.3d 262, 273-74 (5th Cir. 2004), *cert. denied,* 125 S. Ct. 2941 (2005). The court's review is limited to the administrative record.

Aetna relied on the opinions of Moreno's orthopedic surgeon, Howard Cotler. After July 2002, Cotler consistently reported that Moreno could perform light-duty. He also recommended that Moreno exercise at a health club. According to Cotler's records, he even played golf with Moreno.

In August, Celanese suggested a test of functional capacity to determine whether Moreno was ready to return to work. Cotler agreed to perform the evaluation but said that he expected Moreno to pass.

The evaluation showed that Moreno could not yet perform some of his duties at Celanese – specifically, he could not climb ladders or carry a forty-pound tank on his back. In response, Cotler again reported that Moreno could perform sedentary work, but

that because his "pre-injury occupation required him to work in a medium-heavy level," he should not return to Celanese in his original capacity.

Aetna then reviewed the physical requirements of a chemical process operator in the general economy – defined in the Labor Department's dictionary of occupational titles – rather than at Celanese. According to the department, the job required only a light physical demand.

Because both Cotler's examinations and the functional capacity evaluation showed that Moreno could perform light-duty work – and, therefore, perform the material duties of his own occupation in the general economy – Aetna determined that he was no longer totally disabled and terminated the benefits.

The record demonstrates a thorough review; there is no evidence to suggest that Aetna's decision was arbitrary.

5. *80% Test.*

Moreno complains that the hearing officer relied on the wrong policy in the administrative proceeding. Aetna admits that during the administrative appeal, it erroneously sent Moreno's counsel the summary description plan for key executives rather than the one that covered Moreno – the "option two" plan.

Moreno says that he had not seen the controlling plan before Aetna served its initial disclosures in this case. It does not matter whether he had seen it then; what matters is the text of the policy. Regardless, because the material provisions of the summaries are the same, the error was harmless.

The summary for option two coverage contains an "80% test." Specifically, it says that even if a worker is able to do his job or another "reasonable occupation," he will receive benefits if his income "is 80% or less of [his] adjusted predisability earnings." Moreno says that Aetna's failure to analyze that test proves that its decision was arbitrary. He is wrong; Aetna did not consider the provision because it did not apply to Moreno.

Moreno argues that before he began working for Celanese, he earned approximately $27,000 a year as a truck driver. At the time of his injury, he made about $70,000 each year. He claims that his injury now prevents him from earning more than 50% of his Celanese salary.

Assuming this is true, it is irrelevant because Moreno never got another job. The plan requires that he actually *work* at the lower paying job. Moreno furnishes no evidence that he applied for alternative employment, much less that he took a significant pay cut. Instead, he argues that "Aetna has not produced a labor market survey, salary survey, vocational job market analysis or any other objective evidence" that shows that he could earn 80% of his Celanese salary elsewhere. This is Moreno's suit, and it is Moreno's burden to prove.

6. *Rehabilitation Program.*

On January 17, 2004, Aetna approved a rehabilitation program designed to teach Moreno new skills. Moreno says that this investment proves that Aetna knew that he could not return to his, or a similar, job. It does not.

When Aetna suggested the program, Moreno was "disabled" – he could not return to his job as a process operator at Celanese, and he did not have the skills to find another "reasonable occupation." It, therefore, was in Aetna's interest to train him for another job – relieving its responsibility to pay the benefits. Aetna had not yet considered the Labor Department's definition for a chemical process operator.

In July, Aetna reevaluated Moreno's claim and realized that – despite his Celanese job requirements – he had the skills and capabilities to work as a chemical process operator elsewhere. Under the plan, he was no longer totally disabled. Aetna, therefore, ended the rehabilitation program and benefits.

7. *Conclusion.*

Moreno is no longer totally disabled under the Celanese plan. Because he has not obtained another job, there is no way to know his current earning potential. He, therefore, will take nothing from Aetna.

Signed March 28, 2006, at Houston, Texas.

_____
Lynn N. Hughes
United States District Judge